UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID J. JENKINS, | ) | Case No. 4:09CV637 |
| | ) | |
| Petitioner, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| ROBERT WELCH, Warden, | ) | **Report and Recommendation** |
| Toledo Correctional Institution, | ) | **of Magistrate Judge** |
| | ) | |
| Respondent. | ) | |
| | ) | |

    Petitioner David J. Jenkins ("Petitioner") has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  ECF Dkt. #1.  Petitioner seeks relief for alleged constitutional violations that occurred during his Trumbull County, Ohio Court of Common Pleas conviction for one count of murder in violation of Ohio Revised Code ("O.R.C.") § 2903.02(A) & (D).  ECF Dkt. #1; *see also* ECF Dkt. #8, Ex. 1, 5.  On June 24, 2009, Respondent Robert Welch filed a Return of Writ.  ECF Dkt. #8.  On March 30, 2010, Petitioner filed a traverse.  ECF Dkt. #11.

    The case was referred to the undersigned for a Report and Recommendation.  For the following reasons, the undersigned RECOMMENDS that the Court DISMISS the instant petition, in its entirety, with prejudice.

**I.      SYNOPSIS OF THE FACTS**

    The Eleventh District Court of Appeals of Ohio set forth the facts of this case on direct appeal. These binding factual findings "shall be presumed to be correct", and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denie*d, 119 S.Ct. 2403 (1999).  As set forth by the Eleventh District Court of Appeals, the facts are:

{¶ 2} Appellant and his wife, Deana Jenkins, had been experiencing marital problems for some time. By May 20, 2004, Deana had told her friends Bernadette McElroy, Toni Heller, Neil Heller, Karen Osborne, Linda Merrell, Terri Harvey, and Carol Brown that she wanted to leave appellant and was trying to save enough money to rent her own apartment. Many of her friends were aware that Deana had originally planned to wait for the couple's daughter, Desirae, to graduate from high school in the spring of 2005. However, Deana decided she could no longer postpone her departure. She had told her friends she was going to leave once Desirae completed her junior year in the spring of 2004. Appellant ultimately became aware of Deana's plans on his own and communicated his awareness to the couple's mutual friends Toni Heller and Pierre Osborne. Appellant had also explained to the couple's adult son, Durrell, he and Deana may separate.

{¶ 3} On the morning of May 20, 2004, Deana reported to her job at the Trumbull County Child Support Office. Appellant, an associate pastor at the New Jerusalem Fellowship Church, basketball coach, and a house painter, drove Desirae to school. Appellant was scheduled to offer the invocation and benediction at the Kiwanis Club's Scholastics Achievement Banquet that evening. However, between 10:30 a.m. and 11:30 a.m., appellant phoned Jan Vaughn, a fellow Kiwanis Club member and organizer of the event. Appellant explained he was unable to attend the banquet due to a "family emergency." According to Vaughn, appellant stated his nephew had been badly beaten and therefore appellant needed to be with his family.

{¶ 4} On the same morning, appellant visited his niece, Terri Harvey, at her place of employment, Famous Hair, in Warren, Ohio. Terri had been at Appellant's and Deana's home the previous evening conversing with Deana. Appellant greeted Terri and inquired into the substance of the conversation Terri had with Deana. Appellant indicated their conversation and/or Terri's visit prevented him from having sex with Deana.

{¶ 5} Later, between 2:00 p.m. and 3:00 p.m., appellant visited the Renaissance Place in Warren where he encountered two friends, Toni and Neil Heller. In the past, both Toni and Neil had helped Deana address and work through her marital problems. Appellant, aware of Toni's and Neil's influence, confided that he and Deana had made love the night before and thanked them for helping him "salvage their marriage."

{¶ 6} That afternoon, Desirae finished school around 2:00 p .m. She came home and fell asleep until 5:00 p.m. when she was awoken by appellant. Appellant told Desirae they were going to the mall to "look for basketball stuff, for the girl's [sic] basketball team." Durrell had planned to use appellant's green Ford Explorer to apply for summer jobs that evening, and so Durrell was going to drive appellant and Desirae to the home of appellant's parents where appellant could borrow his father's pick-up truck. Deana arrived home as the three were leaving. They arrived at the residence of appellant's parents and Durrell went to fill-out job applications. Once Durrell left, appellant suddenly changed the shopping plans he made with Desirae. He stated he had to attend a meeting at the Rebecca Williams Community Center and left in his father's pick-up truck, without Desirae, at sometime near 5:30 p.m. Desirae recalled appellant was dressed in a dark blue shirt, yellow and blue jogging pants, and black tennis shoes.

{¶ 7} In lieu of going to the community center, appellant returned home. Around 5:45 p.m., Bernadette McElroy stopped at the Jenkins' residence to drop off CDs for Durrell to copy. Bernadette knocked on the door and, when appellant answered the door, she asked to speak with Deana. Appellant told Bernadette that he and Deana were having a "family discussion." Bernadette noticed appellant was wearing "painter pants and

a dress jersey top." After a brief exchange, Bernadette gave the CDs to appellant and began to walk away. As Bernadette was returning to her car, Deana peeked out of a window and asked if Durrell could use her as a job reference. Bernadette testified she left the Jenkins' residence at approximately 5:55 p.m.

{¶ 8} Shortly after Bernadette left, at 6:24 p.m., Deana made a panicked call to her friend Toni Heller. At the time, Toni was in Austintown Township, Mahoning County, watching her son at a track meet. Deana sounded strained and stated she needed someone at her home immediately. Before Toni could respond, Deana repeated her muffled entreaty and the phone went dead. Toni testified Deana sounded as though she could not breathe.

{¶ 9} Toni left the track meet en route to the Jenkins' residence in Warren. At 6:27 p.m., she frantically called Karen Osborne, a mutual friend. Karen testified "[Toni] said she received the phone call and Deana sounded as if she could hardly breathe and said someone needed to get to the house right away." Karen's telephone records revealed she tried to contact Deana's cell phone at 6:31 p.m. but received no response. Toni also called her husband, Neil Heller, a Warren City Firefighter, who was on duty at the Atlantic Street Fire Station. Toni reached Neil shortly after 6:30 p.m. and asked him to go to Deana's aid. Another mutual friend, Carol Brown had been notified of the emergency call and, in turn, Carol called Bernadette. Bernadette, who was shopping at the time, left immediately and rushed to Deana's home.

{¶ 10} When Toni arrived back in Warren, Neil and Karen were already at the Jenkins' residence. Based on her phone records, Karen estimated she arrived at 6:40 p.m. The only car in the driveway was Deana's distinct BMW. Karen knocked on the door but received no response. She tried to open the front and back doors but both were locked. Toni was ultimately able to enter the home through an open bathroom window after which she unlocked the back door and Karen and Neil entered. While inside, Neil searched the basement while Karen and Toni looked upstairs. The house was ostensibly empty. The parties did not thoroughly go through all aspects of the home, but canvassed the main living areas of the house. During their search of the master bedroom, Toni noticed Deana's white purse and a pair of her shoes on the bed.

{¶ 11} In the meantime, appellant had again visited the Rebecca Williams Community Center. At 7:02 p.m., a program coordinator at the center, Alfie Burch, was locking the building when he noticed appellant sitting in a white pick-up truck. Appellant asked Mr. Burch if he had seen one Thurston Winbush, another employee of the community center. Mr. Burch indicated he was uncertain of Winbush's whereabouts and appellant quickly left the Center. Mr. Burch stated that appellant did not exit the truck and appeared to be in a rush. The men spoke for approximately 20 to 30 seconds.

{¶ 12} Appellant returned to his parents' home sometime after 7:00 p.m. to retrieve Desirae. When he arrived, Desirae testified appellant appeared very nervous, he was shaking and sweaty, as though "somebody just poured water on his shirt, or as if he were playing basketball, it was just soaked and just sweat dripping." Desirae recalled May 20, 2004 was not a hot day and she was not sweating. She further noticed her father had a scratch on his nose that was not there when he dropped her off at 5:30 p.m. and was wearing new white sneakers which had no laces. Appellant and Desirae drove toward the Eastwood Mall but did not reach their destination. Instead, they stopped at Burlington Coats on Route 422. In doing so, appellant sent Desirae into the store, and told her not to buy basketball apparel, but to look for clothes for herself. While Desirae was in the store, appellant encountered an old friend, Jane Horne. Ms. Horne stated she and appellant typically have lengthy, interesting conversations. However, on that day, their conversation was brief and clipped. Ms. Horne noticed

-3-

appellant was "sweating profusely" and wiped his face with his shirt three times during their brief exchange. After this conversation, appellant went into Burlington and paid for Desirae's clothes. According to the sales receipt, they left the store at 7:39 p.m.

{¶ 13} Appellant and Desirae returned to the home of appellant's father and mother. Once they arrived, Terri Harvey, appellant's niece, communicated there was an emergency involving Deana. Appellant and Desirae left and returned to the Jenkins' residence. Upon arriving, appellant sent Desirae to search the downstairs while he checked upstairs. As appellant and Desirae were leaving the home, they encountered Karen Osborne. Karen told appellant about Deana's phone call to Toni. Appellant professed that Deana needed to be found and suggested they all should leave the house and search for her. Karen pointed out that someone should stay at the house in the event Deana returns or someone else stopped by the home. Appellant vehemently disagreed and advised that everybody had "to leave and go find her."

{¶ 14} Appellant returned to his truck and appeared to leave to search for Deana. As Karen drove away, she observed Toni coming down the street. She waited and the two women conversed about the situation. During the conversation, she noticed appellant had stopped, turned the truck around, and returned to the house. Toni and Karen surreptitiously followed appellant. As they approached the driveway, Karen heard a slamming noise coming from behind of the house. Appellant appeared and asked "what are you doing back here for?" As the women walked toward the backyard, appellant told them he already investigated the area and found nothing. Toni and Karen both asked appellant if they could look through the house again; however, appellant assured them he had already inspected the entire house, flatly remarking "she ain't in the house."

{¶ 15} As they stood in the driveway, Toni peered into a garbage can and noticed Deana's purse. This was the same purse Deana took to work that morning and the same purse Toni had seen in the master bedroom when she entered the house earlier that evening. Deana's cell phone, keys, and wallet were in the purse. Toni and Karen then entered the garage where they observed a large plastic tarp spread over the floor. Karen, like Desirae and Jane, noticed appellant was perspiring heavily.

{¶ 16} Shortly thereafter, Bernadette arrived followed by Durrell, who was with Carol. Durrell let everyone in the house and the search commenced anew. Durrell first searched his parents' room and then his sister's. Once he opened Desirae's closet, he discovered Deana, beaten and unconscious. Toni rushed into the room as Durrell yelled for his father. Deana fell from the closet to the floor whereupon Karen and Toni commenced CPR. The individuals observed Deana had various abrasions, bruises, and red marks on her face and neck; she had blood in her nostrils and her front tooth was chipped. They noticed Deana was clothed; however, her shirt had mismatched buttons and her skirt was askew and pulled up unusually high. Although Deana's legs were cold to the touch, her upper body was warm. As the women tried to resuscitate Deana, appellant came into the room and violently knocked perfume bottles off a nearby dresser some of which landed on Deana. Neil eventually arrived and continued aggressive CPR. Neil noticed a scratch on appellant's nose that he did not see earlier when they spoke that day.

{¶ 17} Paramedics arrived and appellant told them Deana suffered from a medical condition that caused her throat to close. This proved to be false; Deana had no such condition and was in generally good health. After trying unsuccessfully for 16 minutes to resuscitate her, the paramedics took Deana to the hospital where she was pronounced dead. After an autopsy, Dr. Humphrey Germaniuk, the forensic

-4-

pathologist for Trumbull County, concluded Deana died from strangulation between 6:30 p.m. and 8:30 p.m.

{¶ 18} While at the hospital, Detective Geoffrey Fusco attempted to interview appellant, but he was virtually unintelligible. Appellant simply reiterated that he and Deana had made love that day. After investigating the crime scene and the Jenkins' home, police officers could find no signs of forced entry.

{¶ 19} In the weeks following Deana's death, appellant provided the police with certain theories regarding what he believed happened on May 20, 2004. For instance, he asserted Deana had been the victim of stalking or threats at work; however, a search of Deana's work e-mail revealed nothing unusual or threatening. Further, Lt. Joe Marhulik reviewed old incident reports and canvassed the neighborhood after the homicide, but found no evidence of stalkers or suspicious persons.

{¶ 20} DNA samples were collected from Deana, appellant, and one William Fambro. The samples were analyzed by Brenda Gerardi, forensic scientist with the Ohio Bureau of Criminal Identification and Investigation. She found semen in the victim's underwear and skirt. The non-sperm DNA was consistent with Deana's DNA and the sperm DNA was consistent with appellant's. DNA of both appellant and Deana was recovered from duct tape which was found in the same garbage can in which Toni found Deana's purse. Hair strands stuck to the duct tape matched Deana's DNA.

{¶ 21} Shawn Weiss, associate director for the forensic identity department at Laboratory Corporation of America Holdings, analyzed fingernail clippings from Deana's hands. After analyzing the fingernail clippings he found DNA under the right hand clippings. Weiss concluded he could not rule out appellant or appellant's relatives as a source of this DNA.

ECF Dkt. #8, Ex. 9; *State v. Jenkins*, No. 2006-T-0058, 2007 WL 2351003 at ¶¶2-21 (Ohio App. 11 Dist. Aug. 17, 2007), unreported.

## II.     PROCEDURAL HISTORY

### A.     State Trial Court

On April 1, 2005, the Trumbull County, Ohio prosecuting attorney filed an indictment, charging Petitioner with one count of murder, for purposely causing the death of Deana Jenkins, in violation of Ohio Revised Code ("O.R.C.") § 2903.02(A) & (D).   ECF Dkt. #8, Ex. 1.

On February 21, 2006, the state filed a notice of intent to use statements of the deceased pursuant to Rule 804(b)(6).[1]  ECF Dkt. #8, Ex. 2.  On February 24, 2006, Defendant filed Motion

---

[1]      Ohio Rule of Evidence 804(b) provides in its pertinent part:

The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(6)      A statement offered against a party if the unavailability of the witness is due to

in Limine I, seeking to prohibit the state from eliciting testimony during the trial that Deana Jenkins was "planning on leaving the Defendant and/or divorcing him" and that she had moved her "time table" so that she would be initiating the divorce in a few weeks.  ECF Dkt. #8, Ex. 3.  On February 24, 2006, Defendant filed Motion in Limine II, seeking to prohibit the state from introducing medical records and communications protected by patient-physician privilege.  ECF Dkt. #8, Ex. 4.  Defendant specifically sought to exclude statements he made while seeking medical care on May 21, 2004.  *Id.* On February 27, 2006, the trial court held a hearing on the motions and overruled Motion in Limine I and granted Motion in Limine II on consent of the state.  ECF Dkt. #12 at 6-7, 8 (Trial Transcript, hereinafter "Tr.").

On February 27, 2006, the case proceeded to a jury trial and Petitioner was found guilty of Count I in the indictment.  ECF Dkt. #8, Ex.  5.  On April 4, 2006, the trial judge sentenced Petitioner to a prison term of fifteen years to life.  *Id.*

### B.  Direct Appeal

On May 4, 2006, Petitioner filed a notice of appeal from the trial court's conviction to the Ohio Court of Appeals for the Eleventh District.  ECF Dkt. #8, Ex. 6.  On January 18, 2007, Petitioner filed a brief in support of his direct appeal, raising the following assignments of error:

> I.  THE TRIAL [sic] ERRED AND ABUSED ITS DISCRETION BY PERMITTING NUMEROUS WITNESSES TO TESTIFY CONCERNING THE VICTIM'S INTENTION TO DIVORCE THE APPELLANT
>
> II.  THE TRIAL [sic] ERRED AND ABUSED ITS DISCRETION BY NOT GRANTING APPELLANT'S MOTION FOR A MISTRIAL BECAUSE THE AUDIENCE WAS DISRUPTIVE DURING THE TRIAL
>
> III.  THE TRIAL [sic] ERRED AND ABUSED ITS DISCRETION AND VIOLATED APPELLANTS CONSTITUTIONAL RIGHT TO A FAIR TRIAL BY ALLOWING APPELLEE IN ITS CLOSING ARGUMENT TO IMPLY THAT APPELLANT'S SILENCE WAS AN INFERENCE OF GUILT

---

the wrongdoing of the party for the purpose of preventing the witness from attending or testifying. However, a statement is not admissible under this rule unless the proponent has given to each adverse party advance written notice of an intention to introduce the statement sufficient to provide the adverse party a fair opportunity to contest the admissibility of the statement.

IV.   THE APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE

ECF Dkt. #8, Ex. 7 at i.  On August 30, 2007, the Eleventh District Court of Appeals affirmed Petitioner's conviction.  ECF Dkt. #8, Ex. 9.

**C.     Supreme Court of Ohio**

On October 3, 2007, Petitioner filed a notice and brief in support of jurisdiction in the Supreme Court of Ohio, raising the following propositions of law:

I.    THE TRIAL COURT ABUSES ITS DISCRETION BY ALLOWING HEARSAY TESTIMONY FROM THIRD PARTIES WHERE NO EXCEPTION TO THE RULE CONCERNING SUCH EXISTS

II.   A TRIAL COURT ABUSES ITS DISCRETION BY NOT PROTECTING A JURY FROM INTIMIDATION BY SPECTATORS DURING A TRIAL

III.  A TRIAL COURT ABUSES ITS DISCRETION BY PERMITTING AN APPELLEE TO INFER THAT AN APPELLANT'S SILENCE INDICATES GUILT

IV.   THE APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE

ECF Dkt. #8, Ex. 10, 11.  On January 10, 2008, the Supreme Court of Ohio dismissed the appeal as not involving a substantial constitutional question.  ECF Dkt. #8, Ex. 13.

**D.     28 U.S.C. § 2254 Petition**

On March 23, 2009, Petitioner filed the instant petition for a writ of habeas corpus.  ECF Dkt. #1.  Petitioner has raised the following grounds for relief:

**GROUND ONE:**   THE TRIAL COURT ERRED AND VIOLATED PETITIONER'S CONSTITUTIONAL RIGHTS BY ALLOWING HEARSAY TESTIMONY FROM THIRD PARTIES WHERE NO EXCEPTION TO THE RULE CONCERNING SUCH EXISTS.

**GROUND TWO:**   THE TRIAL COURT ERRED AND VIOLATED PETITIONER'S RIGHTS BY NOT PROTECTING THE JURY FROM INTIMIDATION BY SPECTATORS DURING HIS TRIAL

**GROUND THREE:** THE TRIAL COURT ERRED AND VIOLATED PETITIONER'S CONSTITUTIONAL RIGHTS BY PERMITTING THE STATE TO INFER THAT PETITIONER'S SILENCE INDICATED GUILT

**GROUND FOUR:**  PETITIONER'S CONVICTION IS A CONSTITUTIONAL VIOLATION AS IT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE

ECF Dkt. #1.  On June 24, 2009, Respondent Robert Welch filed a Return of Writ.  ECF Dkt. #8.

On March 30, 2010, Petitioner filed a traverse.  ECF Dkt. #11.

## III.  PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a writ of federal habeas corpus.  As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." 532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

### A.  Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgement became final.  28 U.S.C. § 2244(d)(1).  The AEDPA statute of limitations is not an issue in this case.  See ECF Dkt. ## 1, 8, 11.  Respondent contends, however, that all four grounds in the instant petition are otherwise procedurally-barred.  ECF Dkt. #8 at 10-17.

### B.  Exhaustion of State Remedies

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987).  To exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  General allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated. *McMeans*, 228 F.3d at 681 citing *Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2d Cir. 1984).

-8-

In order to have fairly presented the substance of each of his federal constitutional claims to the state courts, the petitioner must have given the highest court in the state in which he was convicted a full and fair opportunity to rule on his claims.  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  A petitioner fairly presents the substance of his federal constitutional claim to the state courts by: (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law.  *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004), quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003); *see also Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir.) cert. denied, 509 U.S. 907 (1993)(quotation omitted).

In *Harris v. Lafler*, this Sixth Circuit laid out the options that a district court may pursue in dealing with a petition that contains unexhausted claims:

> When faced with this predicament in the past, we have vacated the order granting the writ and remanded the case to the district court so that it could do one of four things: (1) dismiss the mixed petition in its entirety, *Rhines*, 544 U.S. at 274, 125 S.Ct. 1528; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims, *id*. at 275, 125 S.Ct. 1528; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims, id. at 278, 125 S.Ct. 1528; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit, 28 U.S.C. § 2254(b)(2).

553 F.3d 1028, 1031-32  (6th Cir. 2009).  The Supreme Court has held that "the petitioner has the burden . . . of showing that other available remedies have been exhausted or that circumstances of peculiar urgency exist."  *Darr v. Burford*, 339 U.S. 200, 218-19 (1950), *overruled in part on other grounds*, *Fay v. Noia*, 372 U.S. 391 (1963).  A petitioner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal, or that he is actually innocent of the crime for which he was convicted.  *Coleman v. Thompson*, 501 U.S. 722, 748 (1991).

### C.    Procedural Default

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  In these cases, "the state judgment rests on independent and adequate state procedural grounds."  *Coleman*, 501 U.S. at 730.  For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment."  *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) *citing Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis removed).  When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991).  In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state grounds for a state court decision absent a clear statement to the contrary.  *Coleman*, 501 U.S. at 735.

Applying this presumption, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted.  *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986).  Under the *Maupin* test, a reviewing court must decide:

> (1)    whether the petitioner failed to comply with an applicable state procedural rule;
>
> (2)    whether the state courts actually enforced the state procedural sanction;
>
> (3)    whether the state procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review; and
>
> (4)    if the above are met, whether the petitioner has demonstrated "cause" and "prejudice."

*Id*. at 138.

Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule.  *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (state procedural bar that is not "firmly established and regularly followed" cannot serve  to bar federal judicial review); *Franklin v. Anderson*, 434 F.3d 412, 418 (6th Cir. 2006).  The question of whether a state procedural rule was "firmly established

-10-

and regularly followed" is determined as of the time at which it was to be applied. *Richey v. Mitchell*, 395 F.3d 660, 680 (6th Cir. 2005).

Under the second prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (appeal dismissed for lack of jurisdiction); Richey, 395 F.3d at 678 ("a lapsed claim survives if the state court overlooked the default and decided the claim anyway"); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (even if issue is not raised below, where state supreme court clearly addresses the claim, no procedural bar arises); *Boyle v. Million*, 201 F.3d 711, 716-17 (6th Cir. 2000) (where a state appellate court characterizes its earlier decision as substantive, the earlier decision did not rely on a procedural bar; therefore, the cause and prejudice test does not apply).

Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision. *Munson v. Kapture*, 384 F.3d 310, 313-14 (6th Cir. 2004). A state's res judicata rule barring post-conviction claims which could have been raised on appeal is an adequate and independent ground for *Maupin* purposes. *White v. Mitchell*, 431 F.3d 517, 527 (6th Cir. 2005); *Mason v. Mitchell*, 320 F.3d 604, 628 (6th Cir. 2003).

Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 751. "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), cert. denied, 490 U.S. 1068 (1985). If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice. *Smith v. Murray*, 477 U.S. 527 (1986).

-11-

Simply stated, a federal court may review federal claims:

> that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel*, 301 F.Supp.2d 698, 722 (N.D. Ohio 2004).  The above standards apply to the Court's review of Petitioner's claims.

## IV.  STANDARD OF REVIEW

If Petitioner's claims overcome the procedural barriers of time limitation, exhaustion and procedural default, AEDPA governs this Court's review of the instant case.  *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998).  Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus.  The AEDPA provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1)  resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).  In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

-12-

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Furthermore, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.*  Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

    A.    Decisions of lower federal courts may not be considered.

    B.    Only the holdings of the Supreme Court, rather than its dicta, may be considered.

    C.    The state court decision may be overturned only if:

        1.    It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal] or;

        2.    the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or

        3.    'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or

        4.    the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

    D.    Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable.  That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law

-13-

erroneously or incorrectly.'  'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

E.  Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Duttion*, 785 F.2d 131, 133 (6th Cir. 1986).  The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

(e)(1)In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e).  The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact.  *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993).  The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997).  Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law.  *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000).  Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

## V.  ANALYSIS

### A.  PROCEDURAL DEFAULT

#### i.  Cognizability Analysis

Respondent first contends that the instant petition is procedurally defaulted because Grounds One, Two, and Three were not fairly presented to the state courts as federal constitutional claims.

-14-

ECF Dkt. #8 at 10-15.  Respondent also contends that Ground Four is procedurally defaulted and that Ground Four is not a cognizable claim in a federal habeas petition, but Respondent does not articulate how the purported non-cognizability affects procedural default analysis.  *See* ECF Dkt. #8 at 10, 16–17**.**

The undersigned generally agrees that Petitioner did not fairly present federal constitutional claims to the state courts and these issues are procedurally barred to the extent that the instant petition could be construed as presenting cognizable federal claims.  However, the undersigned also believes that the petition presents only one cognizable federal claim because the petition generally makes superficial references to violations of Petitioner's "constitutional rights" and cites only state law in support of his argument.  *See* ECF Dkt. #1 at 6, 8, 9, 11, Ex. C, Ex. D, Ex. E, F.  Another judge in this District considered a similar situation and held as follows:

> Here, Charley attempts to cast this claim as a violation of the United States Constitution well after it was presented to the state court by adding a perfunctory assertion to his habeas petition that the trial court's ruling denied him due process of law. However, federal habeas law requires that any federal constitutional argument be made first to the state court as a federal constitutional argument. [*Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir.1987).] **Moreover, simply labeling an adverse state court ruling a "due process violation" without citing a clearly established federal law applicable to that issue will not present a cognizable claim for habeas relief.** [*Blackmon*, 394 F.3d at 400.]

*See Charley v. Bagley*, No. 1:03 CV 1607, 2006 WL 1624240 at *3 (N.D.Ohio, June 2, 2006), unreported.

Although the undersigned only finds Ground Three to present a cognizable claim, the undersigned will address all four claims in detail.

First, in Ground One, Petitioner cites *State v. Hand*, 840 N.E.2d 151 (Ohio 2006).  ECF Dkt. #1, Ex. C.  The *Hand* court employed the federal constitutional analysis set forth in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).  The *Hand* court noted "the [United States] Supreme Court held that it is a violation of the Confrontation Clause to admit *testimonial statements* of a witness who did not appear at trial unless [the witness] was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Hand*, 840 N.E.2d

-15-

at 395 (emphasis added)(internal quotation omitted).  Despite Petitioner's reliance on *Hand*, he does not allege that the declarant's statements were testimonial, and there is no evidence before this Court that they were.  Accordingly, the undersigned recommends that the Court determine that Ground One does not present a Confrontation Clause claim.

Ground One plainly asserts a state-law evidentiary error based upon the trial court's admission of out of court statements.  Such errors can amount to a due process violation if they are sufficiently egregious.  *See McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) ("Trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment.").  However, the instant petition does not allege that the state law errors rose to the level of a due process violation.  *See Beach v. Moore*, 343 Fed.Appx. 7,  2009 WL 2487357 (6th Cir. Aug. 17, 2009), unreported (requiring proposition of law regarding an alleged error of state evidence law to be phrased in terms of federal constitutional law).  Accordingly, the undersigned recommends that the Court find Ground One to present a pure question of state law that is non-cognizable, insofar as Ground One alleges that the trial court erred in applying state rules of evidence.

Next, the undersigned considers Ground Two, which does not present a cognizable federal claim.  Petitioner asserts that the jury was intimidated because of disruptive behavior by courtroom spectators.  ECF Dkt. #1 at 8, Ex. D.  Petitioner contends that this intimidation resulted in a violation of his "rights."  ECF Dkt. #1 at 8.  A United States Court of Appeals has observed:

> It may fairly be assumed that conversations and other noises emanating from trial audiences are often heard by jurors. This is one of the prices we pay in honoring our long-cherished tradition of conducting criminal trials open to the public. The presumption that criminal trials will be open to the public "has long been recognized as an indispensable attribute of an Anglo-American trial." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 569, 100 S.Ct. 2814, 2824, 65 L.Ed.2d 973 (1980).

*Bruce v. Duckworth*, 659 F.2d 776, 781 (7th Cir. 1981).  And, as one judge noted "It is unrealistic and impossible to expect or require that a jury be a laboratory completely sterilized and freed from all external factors." *Lindsey v. State*, 260 Ind. 351, at 357, 295 N.E.2d 819 at 823 (Ind. 1973).

-16-

Given that: (1) Petitioner has not identified a federal constitutional right that was allegedly violated; (2) the law presumes some interference will occur from a courtroom audience; and (3) Petitioner has made only unsupported assertions of disruptive behavior without any evidence of a causal nexus to an impairment in jury deliberations and, therefore, the undersigned recommends that the Court find that Ground Two does not amount to an allegation of a violation of a federal constitutional right.

The only constitutional claim that the petition presents is contained in Ground Three. Petitioner contends that the prosecution improperly commented on his silence. ECF Dkt. #1 at 9. Respondent characterizes this argument as a "prosecutorial misconduct" claim, but the undersigned believes it is better characterized as a claim that Petitioner's Fifth and Fourteenth Amendment rights to silence had been violated. The United States Supreme Court has held that "The Fifth Amendment guarantees an accused the right to remain silent during his criminal trial and prevents the prosecution for [sic] commenting on the silence of a defendant who asserts the right." *Jenkins v. Anderson,* 447 U.S. 231, 235 (1980); *Griffin v. California*, 380 U.S. 609, 614, 85 S.Ct. 1229, 1232, 14 L.Ed.2d 106 (1965).

Based on the facts alleged, Ground Three could also be construed as a claim that the prosecution improperly violated Petitioner's presumption of innocence by shifting the burden of proof onto him. *See In re Winship,* 397 U.S. 358, 363, 90 S.Ct. 1068, 1072 (1970) ("The [reasonable-doubt] standard provides concrete substance for the presumption of innocence-that bedrock 'axiomatic and elementary' principle whose 'enforcement lies at the foundation of the administration of our criminal law.' "); *Brubaker v. U.S.*, 183 F.2d 894, 898 (6th Cir. 1950). However, the petition in this case plainly alleges that it is challenging the trial court's conviction on the basis that the prosecution inferred guilt from the Petitioner's silence. *See* ECF Dkt. #1 at 9 ("The trial court erred and violated Petitioner's constitutional rights **by permitting the state to infer that Petitioner's silence indicated guilt.**") (emphasis added). Further, Petitioner's brief and traverse do not address burden shifting and cite only one case, *State v. Askew*, which dealt with impermissible prosecutorial commentary on a defendant's silence as a violation of the Fifth Amendment "in its direct application bearing on the States by reason of the Fourteenth Amendment." *See* ECF Dkt. #1,

-17-

Ex. E, #11 at 17-18 citing *State v. Askew*, No. 05CA2877, 2006 WL 2627534 at ¶25 (Ohio App. 4 Dist.,Sept. 11, 2006), unreported.  Therefore, the undersigned recommends that the Court construe Ground Three as presenting only a Fifth and Fourteenth Amendment right to silence claim and not a presumption of innocence claim.

In Ground Four, Petitioner asserts that his conviction was against the manifest weight of the evidence.  ECF Dkt. #1 at 11.  A manifest weight of the evidence claim is not cognizable in federal habeas corpus review. *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir.1985); *Walker v. Timmerman-Cooper*, No. 1:05CV103, 2006 WL 3242101 (S.D. Ohio Oct. 5, 2006).  The United States Supreme Court and the Supreme Court of Ohio have held that manifest weight claims are derived from state law, whereby the state appellate court sits as a "thirteenth juror and disagrees with fact finder's resolution of conflicting testimony" and finds that the "jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Tibbs v. Florida*, 457 U.S. 31, 41-47 (1982); *State v. Thompkins*, 78 Ohio St.3d 380, 389, 678 N.E.2d 541, 546-548 (1997)(superseded by state constitutional amendment on other grounds, *State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668 (1997), cert. denied 523 U.S. 1125 (1998)), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983).  Therefore, Ground Four does not assert a cognizable claim meriting relief from this Court.

In his traverse, Petitioner identifies, for the first time, other federal constitutional rights that were allegedly violated.  Petitioner alleges that the trial court's failure to grant a mistrial following intimidation and harassment of the jury violated his "right to a fair trial."  ECF Dkt. #11 at 3.  Petitioner also alleges that statements made by the prosecution during closing arguments violated "his right to a fair trial and his protection under the Fifth Amendment."  *Id*. at 2-3.  Next, Petitioner mentions that Rule 804 (B)(6), which he alleges the trial court misapplied, was "based upon the doctrine that a defendant, by his own wrongdoing, can forfeit his right to confront witness [sic]." *Id*. at 13.  Petitioner does not specifically allege that his right to confront a witness was violated.  Lastly, Petitioner contends that his "arguments merit consideration by this Court that his conviction is wrongful and his constitutional rights have been violated because he is innocent of the crimes for

which he was convicted." ECF Dkt. #11.  Yet, Petitioner acknowledges that "The actual innocence claim in *Schlup* is 'not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.' " *Id.* at 12 quoting *Schlup v. Delo*, 513 U.S. 298, 326-27, 130 L. Ed. 2d 808, 115 S. Ct. 851 (1995).

To the extent that the traverse identifies specific constitutional rights that the state court allegedly violated, the Court may decline to address the claims that were raised for the first time in the traverse.  *See Tyler v. Mitchell*, 416 F.3d 500, 503 (6th Cir. 2005) ("Because the penalty-phase insufficiency argument was first presented in Tyler's traverse rather than in his habeas petition, it was not properly before the district court, and the district court did not err in declining to address it.").

### ii.        Procedural Default Analysis

If the Court should entertain the newly asserted claims of "fair trial" violations in the traverse, the undersigned recommends that the Court find only Ground Two to be procedurally defaulted because Petitioner failed to move for a mistrial due to the alleged spectator intimidation.  Respondent contends that Grounds One and Three are procedurally defaulted because Petitioner never presented constitutional claims to the state courts. ECF Dkt. #8 at 10-13, 15.  Respondent does not demonstrate that Petitioner would be foreclosed from raising these federal constitutional issues if he were to return to state court.   Thus, Respondent's argument no more demonstrates that propriety of dismissing Grounds One and Three with prejudice due to procedural default than it demonstrates the propriety of dismissing the grounds without prejudice for failing to exhaust remedies.  Respondent argues only that Ground Four is not cognizable.   Respondent has not demonstrated how non-cognizability affects procedural default analysis.  The undersigned will discuss each ground in further detail below.

Turning first to Ground One, Petitioner alleges that the trial court erred and violated his constitutional rights by allowing hearsay testimony where no exception to the hearsay rule existed. ECF Dkt. #1.  Here, Petitioner filed direct appeals with the Ohio Court of Appeals for the Eleventh District and with the Supreme Court of Ohio.  ECF Dkt. #8, Ex. 7, 11.  Petitioner did not frame the alleged trial court errors underlying Grounds One as federal constitutional violations.  *See Id.*

Petitioner claimed:

> THE TRIAL [sic] ERRED AND ABUSED ITS DISCRETION BY PERMITTING NUMEROUS WITNESSES TO TESTIFY CONCERNING THE VICTIM'S INTENTION TO DIVORCE THE APPELLANT

ECF Dkt. #8, Ex. 7 at i.  He asserted a nearly identical proposition of law in the Supreme Court of Ohio.  ECF Dkt. #8, Ex. 11 at 10.  These assertions are insufficient to be considered claims phrased in terms of constitutional law.  *See Beach*, 2009 WL 2487357 at *11.

With respect to Ground One, the only case that Petitioner cited that employs federal constitutional analysis is *Hand*.  ECF Dkt. #8, Ex. 7, Ex. 11.  Notably, in his traverse, Petitioner cites to *Hand*, for the proposition that Ohio law and federal law "mirror one another" in the doctrine that a defendant can forfeit his right to confront a witness.  ECF Dkt. #11 at 13.  Although Petitioner cited *Hand* in the state courts, his mention of the case was brief and he did not explicitly mention the case's constitutional analysis.  Petitioner stated:

> In *State v. Hand* (Jan. 18, 2006) 107 Ohio St.3d 378, the court explained that in order for Evid R. 804(B)(6)[sic], the offering party must show that; "(1) the party engaged in wrongdoing that resulted in the witness's unavailability, and (3) [sic] that one purpose was to cause the witness to be unavailable at trial."

ECF Dkt. #8, Ex. 7 at 9, Ex. 11 at 7.

Even though *Hand* employed the federal constitutional analysis set forth in *Crawford*, the *Hand* court noted "the [United States] Supreme Court held that it is a violation of the Confrontation Clause to admit **testimonial statements** of a witness who did not appear at trial unless [the witness] was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Hand*, 840 N.E.2d at 395 (emphasis added)(internal quotation omitted).  Therefore, if the Court found Ground One to state a Confrontation Clause claim, it would not be procedurally barred insofar as it asserts a claim that Petitioner was denied his right to confront a witness.  Regardless, Petitioner does not allege that the declarant's statements were testimonial, and there is no evidence before this Court that they were.  Accordingly, as stated above, Ground One should be dismissed with prejudice insofar as it relates to the Confrontation Clause.

-20-

Petitioner's reliance on *Hand* does not save Ground One from a procedural bar insofar as it relates to an alleged error of state court law amounting to a due process violation. *See McAdoo*, 365 F.3d at 494 (as to cognizability of state law-based habeas claim). Petitioner's state court propositions of law and assignments of error did not fairly present the claim because they did not phrase the alleged state law evidentiary errors as federal constitutional issues. *See Beach,* 2009 WL 2487357 at *11.

The question becomes, which procedural bar is appropriate to apply – procedural default or exhaustion of state court remedies? Respondent has not shown that Petitioner has no state court remedies remaining. Exhaustion is premised on the principle that a state court remedy remains. *See Fuller v. Tennessee*, No. 3:09-0394, 2009 WL 2850695 at *4 (M.D.Tenn., Aug. 29, 2009) citing *Shelton v. Heard*, 696 F.2d 1127, 1128 (5th Cir.1983); *Riley v. Havener*, 391 F.Supp. 1177, 1178 (N.D. Ohio 1974). But, "a habeas court should excuse exhaustion where further action in state court would be an exercise in futility." *Turner v. Bagley*, 401 F.3d 718, 724 (6th Cir. 2005). While it may be the case here that Petitioner's return to state court would be futile, Respondent has not cited any law demonstrating the futility of pursing further remedies in the state courts. Thus, Respondent has placed the burden on the Court to determine if further action in the state courts would be futile.

In contrast to exhaustion of remedies, procedural default "applies to bar a federal court's review of a state prisoner's federal claim where that prisoner failed to give the state courts a 'full and fair' opportunity to resolve that claim-as the exhaustion doctrine requires-**and the prisoner cannot cure that failure because state-court remedies are no longer available**." *Hicks v. Straub,* 377 F.3d 538, 550 (6th Cir. 2004)(emphasis added). While it may be true that Petitioner did not fairly present any due process claim underlying Ground One, Respondent has failed to demonstrate that Petitioner cannot cure his failure to present the instant claims to the state courts. Specifically, Respondent has not applied the *Maupin* test to Ground One. *See Maupin*, 785 F.2d at 138. Respondent's assertions that Petitioner has failed to present the instant federal claims to the state courts is, without more, inadequate to establish that the claims should be dismissed with prejudice on the basis of procedural default rather than without prejudice for failure to exhaust. Thus

-21-

Respondent has only shown that Ground One, insofar as it is based upon due process, is procedurally barred for failure to exhaust state court remedies.

The undersigned recommends that the Court also find Ground Two to be procedurally barred. Petitioner alleges that the trial court violated his "rights" by not protecting the jury from intimidation by spectators during trial. ECF Dkt. #1 at 8.  In the state court appeals, Petitioner did not frame the issue as a federal constitutional claim or cite any cases employing federal constitutional analysis. ECF Dkt. #8, Ex. 7 at 10, Ex. 11 at 8.  Further, Petitioner did not allege facts obviously within the mainstream of constitutional law.  He asserted that members of the audience were being disruptive during trial, trial counsel moved for a mistrial, the court denied the motion, and the jury had an "extremely difficult time in deciding the case.  *Id*.  Petitioner's assertion that the audience was "disruptive" does not amount to an allegation of juror harassment or intimidation.  As noted above, sounds emanating from the audience in a courtroom are commonplace, and it is unrealistic to expect the jury to be completely separated from them.  *Bruce*, 659 F.2d at 781; *Lindsey*, 295 N.E.2d 819 at 823.  Petitioner's plain assertions of disruptive behavior and assertions that the jury had a difficult time, without any allegation or evidence of a causal nexus to an impairment in jury deliberations, do not amount to a factual allegation that is obviously within the mainstream of federal constitutional law.  Thus, Petitioner has not fairly presented his claim to the state courts.

Here, unlike with Ground One, Respondent demonstrates that procedural default is appropriate because Petitioner did not move for a mistrial in the trial court. ECF Dkt. #8, Ex. 9 at ¶49.  "Ohio employs a contemporaneous-objection rule, under which 'an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.' "  *Shafer v. Wilson*, No. 07-3284, 2010 WL 395914 at *5 (6th Cir. Feb. 4, 2010) unreported, quoting *State v.1981 Dodge Ram Van*, 36 Ohio St.3d 168, 522 N.E.2d 524, 526 (Ohio 1988).  Although Petitioner contends that trial counsel moved for a mistrial on this basis, he does not direct the Court to the portion of the record where this allegedly occurred.  *See* ECF Dkt. #1, Ex. D, #11 at 16. Further, the state court in this case enforced the procedural bar, finding that no

such motion had been made.  *See* ECF Dkt. #8, Ex. 9 at ¶49.[2]  The court then conducted a limited review, similar to a plain-error review.  *Id*.  The Sixth Circuit has held that a state appellate court's review under plain error analysis is not equivalent to a review on the merits.  *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006).  "Ohio's contemporaneous objection rule constitutes an adequate and independent state ground that bars federal habeas review absent a showing of cause and prejudice."  *Hinkle v. Randle,* 271 F.3d 239, 244 (6th Cir. 2001).  Consequently, "a state court's plain error analysis does not save a petitioner from procedural default."  *Id*. citing *Scott v. Mitchell*, 209 F.3d 854, 866 (6th Cir.2000).  Petitioner does not assert cause for failing to comply with the state court's contemporaneous objection rule.  Accordingly, the undersigned recommends that the Court dismiss Ground Two as procedurally defaulted.

In Ground Three, Petitioner contends that the prosecution improperly commented on his silence.  ECF Dkt. #1 at 9.  As noted above, "[t]he Fifth Amendment guarantees an accused the right to remain silent during his criminal trial and prevents the prosecution for commenting on the silence of a defendant who asserts the right."  *Jenkins,* 447 U.S. at 235.  In the state courts, Petitioner argued, as he does here, that the prosecutor asked rhetorical questions that clearly implied Petitioner was guilty because he did not testify.  ECF Dkt. #8, Ex. 7 at 11, Ex. 11 at 9; ECF Dkt. #1, Ex. E.  Ground Three claim clearly alleges facts within mainstream constitutional law, as it did in the state courts.  Thus, the claim was fairly presented to the state courts and it is not procedurally defaulted.

Lastly, the undersigned notes that Respondent has not addressed any reasons for finding Ground Four to be procedurally defaulted, other than for its non-cognizability, which the undersigned has already discussed.

### iii.    Conclusion

In conclusion, the undersigned recommends that the Court find Ground Three to present a cognizable claim that is not procedurally barred.  The undersigned recommends that the Court address this claim on the merits.

---

[2]    The only motion for a mistrial that the undersigned has been able to locate was based upon a hearsay objection.  *See* Tr. at 102.

-23-

The undersigned further recommends that the Court find that Ground One does not present a Confrontation Clause claim because it is not supported by factual allegations indicating that the declarant's statement was testimonial.  The undersigned recommends that the Court find Ground One does not state a claim for a due process violation based upon errors of state law.  The undersigned recommends that the Court find Ground Two is non-cognizable and is procedurally defaulted. Lastly, the undersigned recommends that the Court find that Ground Four is non-cognizable.

**B.    MERITS ANALYSIS**

**i.    GROUND ONE**

In Ground One, Petitioner alleges that the trial court erred and violated his "constitutional rights" by admitting hearsay evidence where no exception applied.  ECF Dkt. #1 at 6.  As discussed above, this ground can be construed as a Confrontation Clause claim or as a Fourteenth Amendment Due Process claim.

Insofar as Ground One can be construed as a Confrontation Clause claim, it lacks merit because the Confrontation Clause precludes testimonial statements and there is no indication that the victim's statements regarding her intent to divorce Petitioner were testimonial.  *See Crafword*, 541 U.S. at 51 ("The text of the Confrontation Clause reflects this focus. It applies to 'witnesses' against the accused-in other words, those who 'bear testimony.' 2 N. Webster, An American Dictionary of the English Language (1828)."). The *Crawford* Court defined 'testimony' as "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id*.  And the Court provided an example that is very appropriate for the case at bar: "An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not. " *Id*. There is no evidence here that the victim made any statements to government officials; all of the evidence indicates that she made casual remarks to acquaintances. In a murder case, the Eighth Circuit Court of Appeals considered the issue of whether the trial court violated the Confrontation Clause by admitting the victim's statements that she was scared of the defendant and intended to obtain a divorce. *Evans v. Luebbers*, 371 F.3d 438 at 444 (8th Cir. 2004). The *Evans* court held:

> . . . *Crawford* does not apply to this particular case. We recognize that there is language in *Crawford* that could arguably encompass some of Sheilah Evans's statements. *See Crawford*, 541 U.S. at ----, 124 S.Ct. at 1364 (discussing "[v]arious formulations of this core class of 'testimonial' statements"). We also recognize that the Court declined to give a full definition of what "testimonial" statements are, specifically saving that question for another day. *Id.* at 1374. Still, by its terms, *Crawford* 's holding applies "to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed." *Id.* The hearsay statements of Sheilah Evans do not fit this definition.

*Evans*, 371 F.3d at 445.  Given the foregoing, the undersigned recommends that the Court find Ground One to lack merit as a Confrontation Clause claim.

Further, Petitioner contends that "Respondent relied solely on Evid. R. 803(3) and Evid. R. 804(B)(6) to allow hearsay testimony of third parties to indicate that the Victim had planned on leaving the Petitioner after their daughter had graduated from high school and then later the Victim indicated that she would leave her husband after the end of their daughter's school year." ECF Dkt. #1, Ex. C.  First, it was the State of Ohio, not Respondent, who offered the evidentiary arguments. Second, it was the trial court, not the State of Ohio, who decided the basis for admitting the testimony.  The trial court admitted the testimony only on the basis of Rule 803(3).  *See* Tr. at 6-7; ECF Dkt. #8, Ex.  9 (quoting trial court: "All right, I guess I am going to address it first primarily as an exception to the hearsay rule under 803(3), the state of mind exception. And it's the opinion of this Court based on what this particular testimony is suppose[d] to be about are intentions and intentions are one of the items that is permissible under 803(3), and future intentions are clearly established and it's clearly rooted in that particular exception, and so long as the testimony turns out to be in that nature, then I believe it is an exception to the hearsay rule. **And the Court's position is that pursuant to 803(3), it's admissible, and the motion in limine is overruled.**") (emphasis added).  The trial court also held that *Crawford* was inapplicable, and thus did admit the statements on the basis on the basis of Rule 804(B)(6).  *See* Tr. at 7.  Therefore, Petitioner's argument related to Rule 804 is misplaced.  The statements were not admitted under rule 804(B)(6) as a forfeiture by wrongdoing, but under rule 803(3) as a statement of a then existing mental, emotional, or physical condition.  The latter did not trigger the Confrontation Clause in this case because the statements

-25-

were not testimonial.

Insofar as Ground One can be construed as a Fourteenth Amendment due process claim arising from an egregious state law error, the undersigned recommends that the Court limit its inquiry to Ohio Rule of Evidence 803(3) because that was the basis of the trial court's ruling admitting the testimony. In this case, the appellate court interpreted Rule 803(3) and determined that the trial court properly applied it. ECF Dkt. #8, Ex. 9 at ¶¶30-39. The court relied upon two Supreme Court of Ohio cases that held that a victim's statements regarding then existing mental impressions were admissible. *Id*. citing *State v. O'Neal*, 721 N.E.2d 73 (Ohio 1999) ("Carol's statements that she was feeling stressed and was afraid of appellant were relevant to prove her intent to end the marriage. These statements were properly admitted as evidence under Evid.R. 803(3), which permits hearsay evidence of a declarant's 'then existing state of mind, emotion, sensation * * * (such as intent, plan, motive, design, mental feeling [or] pain).' To be sure, 'testimony of state-of-mind witnesses, that the victim was fearful and apprehensive [is] not inadmissible hearsay and [is] properly admitted.' * * * In addition, statements about Carol's plans to separate and end the marriage were also admissible under Evid.R. 803(3)."); *State v. Sage,* 510 N.E.2d 343 (Ohio 1987) (in order to disprove evidence of a suicide pact in a murder case, it was proper to admit testimony that victim intended terminate her relationship with the defendant).

In contending that the trial court erred, Petitioner cites one case that is allegedly inapposite. Petitioner notes that in *State v. Apanovitch*, No. 49772, 1986 WL 9503 (Ohio Ct. App. 8th Dist. Aug. 26, 1986), the court held that a victim's statements were admissible because the statements showed that the victim was fearful of the defendant. ECF Dkt. #1, Ex. C. Petitioner contends that this case is distinguishable because nobody has alleged that the victim in this case was in fear of him. *Id*. Petitioner's reliance on a purported inapposite case is not compelling. The state appellate court in this case expressly relied upon two cases where the Supreme Court of Ohio held that a woman's plans to "separate and end the marriage" were admissible under Rule 803(3). *See O'Neal*, 721 N.E.2d at 412; *Sage,* 510 N.E.2d at 350. The precedent upon which the appellate court relied was on-point, clear, and binding. It simply cannot be said that the appellate court committed an error of

state law rendering Petitioner's trial so fundamentally unfair as to deprive him of due process under the Fourteenth Amendment.

For the foregoing reasons, the undersigned recommends that the Court dismiss Count One in its entirety with prejudice due to a lack of merit.

### ii.    GROUND TWO

In Ground Two, Petitioner contends that the trial court erred and violated his "rights" by not protecting the jury from intimidation by spectators.  ECF Dkt. #1 at 8.  Petitioner contends that members of the audience at his trial were disruptive and the trial judge had to reprimand them more than once.  ECF Dkt. #1, Ex. D.  Petitioner contends that the jury had an extremely difficult time in deciding the case and deliberated for approximately two and one half days.  *Id*.  Petitioner further contends that the jury had many questions concerning the evidence.  *Id*.  Lastly, Petitioner contends that the jury was hung at one point and the trial judge instructed them to deliberate further.  *Id*. Petitioner concludes that "under such difficult circumstances for the jury, they should have been free from intimidation and harassment by spectators."  *Id*.

"In any trial, there is initially a presumption of jury impartiality; prejudice will not be presumed, but can be demonstrated by a defendant by a preponderance of credible evidence." *United States v. Winkle*, 587 F.2d 705, 714 (5th Cir.), cert. denied, 444, U.S. 827, 100 S.Ct. 51, 62 L.Ed.2d 34 (1979).  More specifically, disruptions by an audience can violate a defendant's right to a fair trial, as protected by the Sixth Amendment.  *See U.S. v. Saya*, 980 F.Supp. 1152, 1156 (D.Hawai'i,1997); *see also Gannett Co., Inc. v. DePasquale*, 443 U.S. 368,378 (1979) (Holding that the Sixth Amendment, is applicable to the States through the Fourteenth Amendment.).  In this case, however, Petitioner has made no showing that the audience intimidated the jury or affected deliberations.  In contrast, consider *Cosentino v. Kelly*, 926 F.Supp. 391, 393 (S.D.N.Y.,1996) where the jury read a "guilty" verdict, a "major disruption ensued involving family members and friends of petitioners," and when the jury was polled, two jurors changed their verdicts and a third was "unsure". The entire episode was preserved on the record:

THE COURT: Let me just state for the record that which is not already on the record and that is that at the time that the verdict was announced there were a great many members of the defendants' family, friends here, I say 10 to 15 and not all of them but a good many of them just went absolutely off the wall yelling and screaming, several had to be physically restrained, taken out of the courtroom, we had quite a scene here.

As I indicated to the jury, one unlike any that I've ever seen or the attorneys have ever seen, as they indicated to me. And we had, I'd say, at least half a dozen or so court officers here and there were not enough for-we had to send the jury back into the jury room, we had to get the defendants out of the courtroom and we had to do what we could, the court officers had to do what they could to get the disruptive people off the floor and they eventually accomplished doing that. But the scene played out in front of the jury was a terrible one and their state of-I guess you'd have to say emotional distress at this point in time is certainly understandable to this court....

*See Cosentino*, 926 F.Supp. at 393. The trial judge ultimately granted a mistrial.  *Id.*

Here, Petitioner has failed to direct the Court to any evidence of record indicating that a disturbance occurred and what was specifically involved.  Petitioner has not directed the Court to any portions of the record where trial counsel made a comment or an offer of proof regarding the purported disruptions.

In reviewing this issue for plain error, the state appellate court noted that trial counsel never moved for a mistrial.  ECF Dkt. #8, Ex. 9 at ¶49.  The court went on to note that there is no indication in the record that the spectators were attempting to intimidate or harass the jury.  *Id.*  In fact, the court noted that the record does not reflect the content of the comments that were allegedly made.  *Id.*  Consequently, the court held that there is insufficient evidence in the record to demonstrate that a mistrial should have been granted.  *Id.*

The undersigned agrees with the appellate court.  Petitioner has not directed the Court to any specific portions of the record and has left the Court to search the voluminous trial transcript for evidence in support of his claim.  The undersigned has found very little indication in the record that the audience acted inappropriately and no indication that the audience intimidated the jury.  Prior to reading the verdict, the judge stated that the case was very well publicized and emotionally charged, and he would not tolerate any outbursts.  Tr. at 967.  The judge did not specifically indicate that the audience was involved in prior outbursts.  *Id.*  Regardless, the judge ultimately read the guilty verdict and polled the jury on the record.  *Id.* at 967-70.  Unlike the jury in *Cosentino*, each member of this

-28-

jury affirmed that his or her verdict was "guilty." *Id*. Accordingly, the undersigned sees no basis for an assertion of jury harassment or intimidation.

Petitioner also cites multiple cases dealing with the prejudicial impact of courtroom security, such as the effects that a defendant wearing physical restraints has on the presumption of innocence. ECF Dkt. #11 at 16. Petitioner notes that "certain [courtroom] practices pose such a treat to the 'fairness of the factfinding process' that they must be subjected to 'close judicial scrutiny.' " *Id*. The United States Supreme Court made these statements in holding that a court violated a defendant's right to be presumed innocent when it compelled him to wear jail clothing during a jury trial. *Estelle v. Williams*, 425 U.S. 501, 512 (1976). That case and the other similar cases upon which Petitioner relies are inapposite because there is no indication that Petitioner was improperly restrained or forced to wear prison clothing in front of the jury. In fact, Petitioner later alleges that the issue is not whether his right to a presumption of innocence was infringed, but that the jury was intimidated and harassed. *See* ECF Dkt. #1 at Ex. D, 11 at 17. Petitioner offers no explanation as to why the alleged intimidation and harassment may have affected his right to a presumption of innocence. Therefore, the undersigned fails to see how *Estelle* and its progeny are applicable.

For the foregoing reasons, the undersigned recommends that the Court dismiss Ground Two with prejudice due to a lack of merit.

### iii. GROUND THREE

In Ground Three, Petitioner alleges that the trial court erred and violated his constitutional rights by permitting the state to infer that Petitioner's silence indicated guilt. ECF Dkt. #1 at 9. Petitioner contends that Respondent repeatedly asked rhetorical questions during closing arguments, that clearly implied that because Petitioner did not testify, he must be guilty. ECF Dkt. #1, Ex. E. The undersigned notes again that it was not Respondent who prosecuted Petitioner; it was the State of Ohio.

Regardless, Petitioner does not direct the Court to portions of the record where the alleged infractions occurred. Petitioner contends that he objected and the objection was overruled. ECF Dkt.

#1, Ex. E.  Petitioner also contends that, even if the trial court had sustained his objection, the prosecutor's statements would have prejudiced Petitioner.  Even so, Petitioner did not move for a mistrial.  *See* Tr. at 883-903, 935-947.

The undersigned has reviewed the portion of the transcript reflecting the state's closing arguments and notes four occasions where the prosecution commented on the lack of evidence presented by the defense.  On three of these occasions, the defense did not object.  *See* Tr. at 888: 15-20; 889:22-890:1; 898:19-21.  The appellate court did not review these statements.  ECF Dkt. #1, Ex. 9 at ¶¶55-60.  Accordingly, these claims were waived under Ohio's contemporaneous objection rule, as discussed above.  *See Shafer*, 2010 WL 395914 at *5.  The one time defense counsel did object, the prosecutor had stated:

> Now, we heard from various witnesses that this Defendant played basketball or football with some of the neighborhood kids.  What witness came here and said, oh, yeah, I played with David Jenkins.  What witness in his own neighborhood –

Tr. at 896:14-19.  This statement in no way inferred guilt from Petitioner's silence.  The prosecutor merely stated that no third party corroborated Petitioner's presence at a basketball or football game, after his daughter testified that his clothes were drenched as if he had played basketball.  If anything, the statement arguably shifted a burden onto Petitioner, but, as noted above, this is not Petitioner's claim in Ground Three.  Petitioner's claim is based upon the prosecutor's alleged comment on his silence.  Even so, the appellate court noted:

> {¶ 56} The substance of appellant's defense was related to the court via the testimony of Pierre Osborne. Mr. Osborne testified that on June 17, 2004, several weeks after Deana's death, he met with appellant. During this meeting, appellant discussed his whereabouts on May 20, 2004. In particular, appellant asserted he was driving his father's pick-up truck in his neighborhood when he observed several children throwing a football. Appellant stated he approached them, threw the ball with them, and asked the children if they would pass out fliers for his painting business. The children acceded and appellant alleged he returned to his home to retrieve the fliers. When he arrived, Deana was home and they had sexual intercourse. Afterwards, there was a knock at the door that appellant answered. Bernadette McElroy had stopped at the Jenkins' home to speak with Deana. After Bernadette left, appellant asserted he returned to deliver the fliers to the children but they were no longer there. According to Pierre Osborne, appellant then alleged he and Desirae went shopping. After he left home, appellant claimed he never saw Deana alive again.

*   *   *

{¶ 60} We agree with the trial court. Here, the prosecutor was simply commenting upon the failure of the defense to offer evidence in support of its theory of the case. Such comments are permissible within the context of closing argument. *See State v. Clemons* (1998), 82 Ohio St.3d 438, 452, 696 N.E.2d 1009; *see, also, State v. Williams* (1986), 23 Ohio St.3d 16, 19-20, 490 N.E.2d 906; *State v. Bies* (1996), 74 Ohio St.3d 320, 326, 658 N.E.2d 754. The prosecutor's comment in no way relates to appellant's assertion of his right to remain silent. At most, the prosecutor's statement is a comment on the silence of a potential witness who may have supported appellant's theory. Even when viewed in this regard, the Supreme Court has held that prosecutor may properly comment on the silence of a witness other than the accused. *State v. D'Ambrosio* (1993), 67 Ohio St.3d 185, 193, 616 N.E.2d 909; *See, also, State v. Petro* (1948), 148 Ohio St. 473, 498, 76 N.E.2d 355. The prosecutor's comment was directed at the adequacy of appellant's version of events, and was therefore permissible within the framework of closing argument.

ECF Dkt. #8, Ex. 9 at ¶56, 60.

Returning to the claims presented in Ground Three, prosecutor's comment had nothing to do with Petitioner's silence because he was not a witness who could have testified that "I played [basketball] with David Jenkins." Therefore, the undersigned recommends that the Court dismiss Ground Three with prejudice.

### iv.    GROUND FOUR

As noted above, Petitioner's manifest weight of the evidence claim is not cognizable in a federal habeas petition. The undersigned also notes that Petitioner argues that the evidence against him was "highly circumstantial" and there were often discrepancies in the testimony of the witnesses. ECF Dkt. #1, Ex. F. Even if a manifest weight of the evidence claim were cognizable, the undersigned notes that circumstantial evidence may be sufficient to support a conviction. *Clifford v. Chandler*, 333 F.3d 724, 728 (6th Cir. 2003) , *overruled in part on other grounds by Wiggins v.Smith*, 539 U.S. 510 (2003); *Apanovitch v. Houk*, 466 F.3d 460, 488 (6th Cir. 2006); *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003). "[C]ircumstantial evidence alone may be enough to support a conviction if that evidence is substantial and competent." *See Woodley v. Bradshaw*, Case No. 1:05 CV 0028, 2008 WL 2048209, at *10 (N.D.Ohio May 12, 2008); *see also Dell v. Straub*, 194 F.Supp.2d 629, 647 (E.D.Mich.,2002) ("A conviction may rest on circumstantial evidence and a federal habeas court reviewing the sufficiency of evidence to support a conviction need not rule out all possible interpretations of the circumstantial evidence."). Here, the evidence was submitted to

the jury and the jury determined that evidence was sufficient to establish beyond a reasonable doubt that Petitioner committed the crime.

It is plainly inappropriate to ask this Court to re-weigh the evidence that the jury has already given due consideration. Such a task is beyond the province of a federal habeas court. *See* ECF Dkt. #1, Ex. F, #11 at 21-25.[3] As one district court noted:

> On habeas review, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir.1992). A habeas court must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir.2003).

*Wolfe v. Bock*, 412 F.Supp.2d 657, 681 (E.D.Mich.,2006). Accordingly, the undersigned recommends that the Court dismiss Ground Four in its entirety with prejudice due to a lack of merit.

## VI.    CONCLUSION

For the foregoing reasons, the undersigned RECOMMENDS that the Court DISMISS instant petition in its entirety with prejudice.

DATE: April 26, 2010                                    *s/ George J. Limbert*
                                                        GEORGE J. LIMBERT
                                                        UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

---

[3]     Pages 22-25 of Petitioner's traverse are all labeled "22."